UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00152-GNS-LLK

**QUINCY BAILEY**                                                                                          **PETITIONER**

v.

**RANDY WHITE, Warden**                                                                      **RESPONDENT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

Petitioner, who is represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Docket Number (DN) 1. Respondent responded in opposition to the petition (DN 9), and Petitioner filed a reply (DN 11). The Court referred the matter to the undersigned Magistrate Judge for report and recommendation (DN 3), and it is ripe for determination.

A McCracken Circuit Court jury convicted Petitioner of an offense, which the state court interpreted as murder, and fixed his punishment at life imprisonment.

The petitioner claims that 1) his Due-Process rights were violated by submission to the jury of an ambiguous verdict form that created a reasonable doubt as to whether the jury intended to convict him of murder or first-degree manslaughter; 2) his trial counsel was ineffective for failing to object to this ambiguity; and 3) trial counsel was ineffective for failing to investigate potential witnesses in support of his defense of self-defense.

Although a close-call, Petitioner's Due-Process claim does not rise to the level of harmful constitutional error warranting relief in a habeas context. To the extent the Court is persuaded that Petitioner's Due-Process claim does not merit relief, his ineffectiveness claim for failure to object to the verdict form is not of case-dispositive significance because it is asserted only for the limited purpose of excusing the procedural default of his Due-Process claim. Petitioner's ineffectiveness claim for failure to investigate witnesses is without merit.

Therefore, the Magistrate Judge RECOMMENDS that the Court DENY the petition and GRANT a certificate of appealability on Petitioner's Due-Process claim.

**Background facts and procedural history pertaining to Petitioner's Due-Process claim**

It is undisputed that Petitioner killed Billy Askew, who died of multiple gunshot wounds, on August 2, 2004, in a notorious area of Paducah known as "The Set." Askew forced Petitioner to leave The Set at gunpoint. Petitioner returned with a gun.

Both men were armed and both fired shots at the other. Petitioner's defense was self-defense. The jury was called upon to determine Petitioner's state of mind at the time he shot Askew and, based on that, to either acquit or convict of an appropriate degree of homicide. The essential question before the jury was who fired the first shot and/or who was the initial aggressor.

According to the Kentucky Supreme Court, the trial testimony "supported many different conclusions as to [Petitioner's] state of mind at the time he returned to The Set and killed Askew. There were contradictory accounts as to who fired the first shot." A copy of the Kentucky Supreme Court's "not to be published" opinion is at DN 9-3, pp. 365-384 and is also available on Westlaw at 2009 WL 1830808, at *4.

Petitioner claims that his Due-Process rights were violated by a jury verdict that the Kentucky Supreme Court characterized as "unclear or open to multiple interpretations." Id.

The verdict form required the jury to either find the Petitioner not guilty or to find him guilty of one of four degrees of homicide defined by state law in one of four instructions. The offenses listed on the verdict form do not correspond to the instruction numbers defining those offenses. Therefore, in finding Petitioner guilty of "Murder under Instruction No. 4," which defines first-degree manslaughter, the jury arguably intended to convict him of first-degree manslaughter.

While the Court believes the foregoing to be an accurate description, the ambiguity in this case is more readily grasped by seeing for oneself rather than relying on the characterization of others. A

copy of the verdict form and jury instructions are at DN 9-3, pp. 17-18 and 4-16, respectively.  They are reproduced below, with omissions indicated by ellipses (...):

VERDICT FORMS

**VERDICT FORM NO. 1:**
**EXECUTE ONE AND ONLY ONE OF THE FOLLOWING:**

A.  We, the jury, find the Defendant, Quincy D. Bailey, guilty of Murder under Instruction No. 4.

[The signature of the foreperson appears here.]<br>FOREPERSON

OR

B.  We, the jury, find the Defendant, Quincy D. Bailey, guilty of First-Degree Manslaughter under Instruction No. 5.

_____<br>FOREPERSON

OR

C.  We, the jury, find the Defendant, Quincy D. Bailey, guilty of Second-Degree Manslaughter under Instruction No. 6

_____<br>FOREPERSON

OR

D.  We, the jury find the Defendant, Quincy D. Bailey, guilty of Reckless Homicide under Instruction No. 7.

_____<br>FOREPERSON

OR

E.  We, the jury, find the Defendant, Quincy D. Bailey, not guilty of (sic.) under Instruction Nos. 3, 4, 5 and 6.

_____<br>FOREPERSON

The relevant jury instructions read as follows:

### INSTRUCTION NO. 3
**Murder**

You will find the Defendant, Quincy D. Bailey, guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: ...

### INSTRUCTION NO. 4
**First-Degree Manslaughter**

If you do not find the Defendant, Quincy D. Bailey, guilty of Murder under Instruction No. 3, you will find the Defendant, Quincy D. Baily, guilty of First-Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: ...

### INSTRUCTION NO. 5
**Second-Degree Manslaughter**

If you do not find the Defendant, Quincy D. Bailey, guilty under Instruction Nos. 3 or 4, you will find him guilty of Second-Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: ...

### INSTRUCTION NO. 6
**Reckless Homicide**

If you do not find the Defendant, Quincy D. Bailey, guilty under Instruction Nos. 3, 4, or 5, you will find him guilty of Reckless Homicide under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: ...

### INSTRUCTION NO. 7
**Self-Protection**

Even though the Defendant, Quincy D. Bailey, might otherwise be guilty of an offense under Instruction Nos. 3, 4, 5 or 6, if at the time the Defendant killed Billy Askew (if he did so), he believed that Billy Askew ....

Upon completion of the guilt-innocence phase of trial, the jury retired for deliberations and returned with a verdict, which the judge read in open court: "We, the jury, find the Defendant, Quincy D. Bailey, guilty of Murder under Instruction No. 4." Tape 2 of 3; August 9, 2006; 17:13:31.

The judge then polled the jury: "When I read your [juror] number and, if that was your verdict, would you please say 'yes.'" 17:13:43. Each juror responded "yes."

During the sentencing phase of trial, parole officer Johnny Samples testified on Petitioner's behalf regarding parole eligibility for various offenses and sentences.

The judge read the instructions, which required the jury to "fix [Petitioner's] punishment ... at confinement in the penitentiary for a term not less than twenty (20) years nor more than fifty (50) years or for life, in your discretion."  17:23:07 reading instruction at DN 9-3, p. 20.

The jury retired (17:25:29), asked to review the video recording of Mr. Samples' testimony, and returned with a verdict fixing the punishment at "25 years to life."  DN 9-3, p. 23.

The judge instructed the jury:  "Ladies and gentlemen, ... you have rendered a verdict that is not available.  It either has to be a term of years between 20 and 50; or a life sentence."  17:56:16.[1]

The jury returned with a verdict of life.  18:05:09.

On August 9, 2006, the last day of trial, the judge discharged the jury, and the trial concluded with the judge's pronouncement to Petitioner:  "I do hereby find you guilty of murder and order you be sentenced on October 5 at 1:30 pending a presentence report prepared by the Division of Probation and Parole."  18:06:40.

On August 14, 2006, the judge entered a Trial Order, stating, in relevant part, as follows *(emphasis original)*:

> Trial was completed in two (2) days, and, after deliberations, the Jury returned with a verdict finding the defendant Guilty of Murder.  **The jury was polled as to their finding.  Although, there is a typographical error in the verdict form, that both the Commonwealth and the defense counsel over looked, it does not effect [sic] the outcome of the jurors clear verdict of Murder.**
> ...
> IT IS THEREFORE ORDERED that the defendant is GUILTY of the crime(s) of Murder.
>
> ENTERED from the Bench 9th day of August, 2006, and DATED this 14 day of August, 2006.[2]

(DN 9-3, p. 24).

---

[1] Murder, a Class A felony, carries a sentence of "not less than twenty (20) years nor more than fifty (50) years, or life." Kentucky Revised Statutes (KRS) 532.060(2)(a).

[2] While the Kentucky Supreme Court found that "[t]he ambiguity in the verdict form was not recognized at trial," 2009 WL 1830808 at *6, this last sentence of the Trial Order suggests otherwise because August 9, 2006, was the last day of trial and it is unclear how the trial judge entered an order from the bench if not at the trial.

The Clerk's Certificate indicates that the Trial Order was served on defense counsel.  DN 9-3, p. 25.

Before sentencing Petitioner on October 5, 2006, the judge asked counsel:  "Is there any legal cause why sentence cannot be imposed and judgment pronounced?"  Tape 3 of 3; October 5, 2006; 13:56:24.  Counsel responded, "No, your honor."

The Kentucky Supreme Court affirmed Petitioner's conviction upon direct appeal.  2009 WL 1830808.

The Court found that Petitioner's verdict-form error claim was waived and not properly preserved for appellate review because defense counsel failed to raise an objection to the verdict-form error before the jury was discharged.  Id. at *7.

The Court recognized an exception to the foregoing waiver rule where the verdict is "so ambiguous that it cannot be ascertained what determination has been made of the claim."  Id. quoting *Smith v. Crenshaw*, 344 S.W.2d 393, 395 (Ky.1961).  However, the Court found that "the jury's intention to find [Petitioner] guilty of murder can be ascertained from the circumstances of the trial."  Id.

The Court identified four such circumstances:

1.  "Contrary to [Petitioner's] arguments, we believe the jury was aware that manslaughter and murder are distinct offenses [in light of closing arguments during the guilt-innocence phase of trial which] thoroughly explained the degrees of homicide."  Id.

2.  When the jury was polled, specific reference was made to its having "found defendant guilty of murder."  Id.

3. "We believe that, had the jury intended to convict [Petitioner] of the lesser offense of first-degree manslaughter, it is improbable that it would then recommend the harshest possible sentence [of life]." Id.[3]

4. Defense counsel's indication that he knew of no lawful reason why sentence should not be imposed "evidence[d] the general understanding held by defense counsel, the Commonwealth, and the trial court, that [Petitioner] was found guilty of murder, **even after the apparent defect was brought to light** *(emphasis original)*." Id. at 8.

The Court found no "palpable error,[4] though [the verdict-form error claim is] completely unpreserved for appellate review." Id. at 6.[5]

**Petitioner fairly presented his Due-Process claim to the state court.**

Only claims of constitutional (not merely state-law) error are cognizable in a federal habeas corpus petition. See 28 U.S.C. § 2254(a) (habeas relief is available only if the petitioner is being held "in violation of the Constitution or laws or treaties of the United States").

A habeas court generally will not consider a claim if the petitioner did not first present its factual and legal basis to the state court, thereby alerting the state court to the claim's constitutional dimension and giving it a full and fair opportunity to correct the alleged wrong. Normally, the exhaustion

---

[3] Murder, a Class A felony, carries a sentence of "not less than twenty (20) years nor more than fifty (50) years, or life." Kentucky Revised Statutes (KRS) 532.060(2)(a). First-degree manslaughter, a Class B felony, ordinarily carries a sentence of "not less than ten (10) years nor more than twenty (20) years." KRS 507.030 and 532.060(2)(b). However, due to Petitioner's status as a second-degree persistent felony offender (DN 9-3, p. 1), he faced a range of penalty for first-degree manslaughter that was the same as for murder. KRS 532.080(5).

[4] RCr 10.26 provides that: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." The federal counterpart of RCr 10.26 is Fed.R.Crim.P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention"). *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006).

[5] If Petitioner's Due-Process claim had been preserved for appellate review, rather than palpable error, the standard of review would have been whether the prosecution "prov[ed] beyond a reasonable doubt that the [constitutional] error complained of did not contribute to the verdict obtained." *St. Clair v. Commonwealth*, 451 S.W.3d 597, 633 (Ky.2014) quoting *Chapman v. California*, 386 U.S. 18, 24 (1967).

requirement is satisfied after a petitioner fairly presents his claim to the state's highest court upon direct appeal of his conviction. *O'Sullvan v. Boerckel*, 526 U.S. 838, 842 (1999).

The fair-presentation requirement is satisfied when a petitioner's (defendant's) appellate brief "phras[es] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or [if the brief] alleg[es] facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

Respondent argues that Petitioner did not fully and fairly present a constitutional Due-Process (but merely a state-law verdict-form) claim to the Kentucky Supreme Court.

Petitioner's appellate brief is divided into seven parts. Part III is styled: "The Guilty Verdict Is Void For Irregularity And Inconsistency." DN 9-3, p. 230. The brief cited state law for the proposition that a verdict must be set aside if it is so uncertain, indefinite, inconsistent, or illogical that the it cannot fairly be determined exactly what crime the jury found the defendant committed. Id. at 231. The brief's concluding argument was that:

> [D]ue to a fatally flawed verdict form, it is just as likely that the jury intended to convict for first-degree manslaughter although no one will ever know for sure. ... Given the nature of the errors, it cannot be said that Mr. Bailey was provided a fair trial or one comporting with any reasonable notion of **due process** *(emphasis added)* under either the state or federal constitutions.                                                          (Id. at 239).

The Kentucky Supreme Court recognized that:

> Where a jury's verdict is unclear or open to multiple interpretations, a criminal defendant's substantial rights are certainly implicated. ... The circumstances surrounding this jury verdict are highly unusual, and Appellant's arguments implicate the most fundamental rights of a criminal defendant: the right to a unanimous verdict and the absolute necessity of clear and unambiguous verdicts, particularly in criminal cases. For this reason, we have undertaken an especially thorough review of the record in this case.        (2009 WL 1830808, at *6 and 8).

Because Petitioner specifically phrased his verdict-form error claim in terms of "due process" under the federal Constitution and the Kentucky Supreme Court recognized it as implicating "the most fundamental rights of a criminal defendant," Petitioner fairly presented a constitutional Due-Process claim to the state courts.

**Analysis of Petitioner's Due-Process Claim**

Even an error of constitutional magnitude may be deemed harmless in a habeas context. A constitutional error that implicates trial procedures[6] is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

"[M]istaken or ambiguous verdict forms should generally be analyzed for prejudice under the habeas harmless error standard, which asks whether the mistake or ambiguity had a substantial and injurious effect or influence on the jury's verdict." See *Silva v. McDonald*, 891 F.Supp.2d 1116, 1125 (C.D.Cal.2012) (collecting authorities). The prejudicial effect "should be considered in its context and with consideration of all of the circumstances at trial." Id.[7]

The determination of whether an error was harmful in a habeas context is based, not on burdens of proof or other technical concepts, but upon a genuine exercise of "conscientious[ness]" on the part of the reviewing judge. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). If the judge is convinced that the error had an injurious effect on the verdict, he or she should grant relief. At the other extreme, if, "when all is said and done, the [judge's] conviction is sure that the error did not influence the jury, or had but very **slight** *(emphasis added)* effect, the verdict and the judgment should stand." Id. at 437 quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). In those special circumstance in which record review leaves a conscientious judge in "**grave** *(emphasis added)* doubt," i.e., "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error," the judge should treat the error as harmful. Id. at 434.

---

[6] A trial error (as opposed to a structural defect) is one that "occurred during presentation of the case to the jury," and its effect may "be quantitatively assessed in the context of other evidence presented." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). Petitioner's verdict-form error claim is a trial-error claim because its effect may be evaluated -- as the Kentucky Supreme Court did evaluate it -- in light of the "circumstances of the trial." 2009 WL 1830808 at *7.

[7] Respondent's reliance on case law concerning habeas review of claims of jury-instruction error, for example, *Henderson v. Kibbe*, 431 U.S. 145 (1977), is unpersuasive because the claim here is that the verdict was unclear and there is no allegation that the instructions themselves were erroneous.

For the reasons below, the doubt as to whether the jury intended to convict Petitioner of murder or first-degree manslaughter is greater than "slight" but less than "grave" as contemplated by *O'Neal v. McAninch*, supra. Therefore, the recommendation will be for the Court to find the verdict-form error harmless and grant a certificate of appealability.[8]

While the state court identified four trial circumstances that purportedly allowed it to ascertain the jury's intent, they are not fully satisfactory.

The fact that the jury was aware that manslaughter and murder are distinct offenses did not make an ambiguous verdict unambiguous.

When polled, the judge merely read the verdict form, which stated "We, the jury, find the Defendant, Quincy D. Bailey, guilty of Murder under Instruction No. 4," and each juror answered "yes" that was his/her verdict. Tape 2 of 3; August 9, 2006; 17:13:31. There was no polling as to whether the intent was Murder or the offense defined by Instruction No. 4 (i.e., first-degree manslaughter).

Based on the information available to it and taking into account parole eligibility, the jury may have believed that 50 years – not life – was the harshest possible sentence. This is because probation officer Johnny Samples testified that parole eligibility for a life sentence occurs after 25 years (Tape 2 of 3; August 9, 2006; 17:18:25) and, at a subsequent bench conference on whether Mr. Samples' testimony misled the jury, the parties agreed that the jury was not told anything about parole eligibility for a term of years (17:49:22).

It would have been futile for trial counsel to object at sentencing (nearly two months after the jury had been discharged) to a previously-entered Trial Order that specifically found that the verdict-form irregularity "does not effect [sic] the outcome of the jurors clear verdict of Murder." DN 9-3, p. 24.

---

[8] A certificate of appealability is appropriate where Petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The trial-court record contains additional evidence, besides that relied upon by the state court, which bolsters a finding that the jury's intent was to convict of murder rather than first-degree manslaughter.

The verdict form lists the offenses in descending order from most to least serious: Murder, First-Degree Manslaughter, Second-Degree Manslaughter, Reckless Homicide, Not Guilty.  DN 9-3, pp. 17-18.  In this context, it is unlikely that the jury and/or foreperson selected the option at the top of the list if the intent was not to convict of the second most serious offense.  Additionally, although the state court characterized the verdict-form irregularity as a "typographical error," it extended well beyond a mere mistake in the typing process.  There is a systematic miscorrelation of offense names and defining jury instructions.  This fact makes it more likely that the jury intended to convict of murder.  This is because, in reading the verdict form carefully, which the jury and/or foreperson likely did, when one arrives at the lowest, or fourth, offense of "Reckless Homicide under Instruction No. 7," it becomes clear that the names, not the numbers, are meant to govern because Instruction No. 7 does not define an offense.  It is an instruction on self-protection.

Doubt is further allayed by the fact that, while "Section 7 of the Kentucky Constitution requires a unanimous verdict," *Anderson v. Commonwealth*, 2015 WL 6560442 (Ky.) quoting *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky.1978), "a state criminal defendant, at least in noncapital cases, has no federal [constitutional] right to a unanimous jury verdict." *Schad v. Arizona*, 501 U.S. 624 n.5 (1991).[9]  Therefore, "a jury unanimity claim, standing alone, will therefore afford no basis for habeas relief." *Mykolaitis v. Howes*, 2011 WL 3624949 n.5 (E.D.Mich.).  Even if one or a few jurors intended to convict Petitioner of first-degree manslaughter rather than murder, this was not necessarily "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

---

[9] The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, provides, in relevant part, that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district in wherein the crime shall have been committed[.]"

Petitioner's Due-Process claim raises, at worst, a harmless error and, therefore, does not merit relief.

### Judicial economy favors consideration of the merits prior to Respondent's procedural-default defense.

Ordinarily, a habeas court resolves a respondent's defense that a petitioner's claim is procedurally barred prior to or in lieu of a consideration of the merits. However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [merits] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix* at 525.[10]

Therefore, to the extent the Court is persuaded that Petitioner's Due-Process claim does not merit relief, the procedural default relied upon by Respondent is immaterial.

Judicial economy favors first considering the merits of Petitioner's Due-Process claim, not because it is easily resolvable against Petitioner, but because (for the reasons explained below) resolution of the procedural-default question is intertwined with the Court's view of the underlying merits.

### The state court asserted a procedural bar.

When the state court "clearly and expressly" relies on a state procedural rule for not deciding the merits of a constitutional claim, that rule constitutes an "independent and adequate" basis under state law for the habeas court's declining to consider the constitutional merits. *Coleman v. Thompson*, 501 U.S. 722 (1991).

---

[10] The principle that a court may deny a claim on the merits notwithstanding a procedural default also follows from 28 U.S.C. § 2254(a)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," because procedural default is a type of failure to exhaust.

12

The Kentucky Supreme Court found no "palpable error, though [the Due-Process claim is] completely unpreserved for appellate review." 2009 WL 1830808 at *6. Although this suggests that, rather than strictly avoiding the merits, the court did consider the merits, albeit in the alternative, for palpable error, the Sixth Circuit considers a plain, or palpable, error review by the state court as the enforcement of a procedural default for habeas purposes. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.2001); see also *Williams v. Eastern Kentucky Correctional Complex*, 2011 WL 3475087 (E.D.Ky.) (collecting authorities).

### The procedural rule relied upon by the state court does not bar consideration of the merits.

A state court's declining to reach the merits of a constitutional claim due to a state procedural rule is entitled to deference by a habeas court only if it is "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

Besides this case, the Court is unaware of any authority for the proposition that a defendant is barred from appealing a trial judge's finding in a written order -- in this case, that an acknowledged trial error was not prejudicial (DN 9-3, p. 24) -- because the order was not preceded by objection at trial and not followed by objection at sentencing.

Additionally, the trial judge found that "both the Commonwealth and the defense counsel [simply] over looked" the error. DN 9-3, p. 24. It seems somewhat unfair and artificial for the state court to attribute an oversight on the part of all trial participants having a duty to insure that the verdict form was correct (i.e., trial judge, prosecution, and defense counsel) solely to defense counsel.[11]

---

[11] According to the Kentucky Supreme Court, the rule of waiver where there is no objection prior to discharge of the jury is required to avoid "misusing procedural rules." 2009 WL 1830808 at *6 quoting *Beaty v. Commonwealth*, 125 S.W.3d 196, 215 (Ky.2003). In *Beaty*, the trial court advised defendant of a verdict-form error, asked defendant is he wanted to poll the jury, and he declined, choosing instead to appeal the matter. There was no such strategic misuse of procedural rules in this case. Simply, no one noticed the error until long after the jury had been discharged.

The procedural rule relied upon by the state court for declining to reach the merits of Petitioner's Due-Process claim does not bar this Court from considering the merits.

### Assuming Petitioner's Due-Process claim is meritorious, any procedural default was excused by ineffective assistance of counsel.

Alternatively, even if the procedural rule asserted by the state court is binding on this Court, the default is excused if Petitioner can show cause for failure to follow the rule (i.e., to object to the verdict-form error) and actual prejudice resulting therefrom. *Coleman v. Thompson*, 501 U.S. 722 (1991).[12] Ineffective assistance of counsel constitutes cause excusing a procedural default. *Murray v. Carrier*, 477 U.S. 478 (1986).

Counsel performed ineffectively if his performance was objectively deficient and the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice occurs when there is "a reasonable probability that, but for [counsel's deficient performance], the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

To the extent the Court finds Petitioner's Due-Process claim to be meritorious (i.e., it is in grave doubt as to the effect of the verdict-form error on Petitioner's conviction), it will likely also be inclined to find that counsel performed deficiently for failing to object to such error before discharge of the jury and that there is a reasonable probability that an objection would have resulted in clarification from the jury that the conviction was for first-degree manslaughter.

Assuming the underlying Due-Process claim is meritorious, counsel's ineffectiveness excused Petitioner's failure to properly preserve it for appellate review.

---

[12] Petition cites *Coleman* for the proposition that a procedural default also is excused in order to prevent a fundamental miscarriage of justice. However, the "miscarriage of justice" exception applies only where new evidence shows that a constitutional violation probably resulted in a conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). The Kentucky Supreme Court found that "ample evidence," including eyewitness testimony, supported Petitioner's murder conviction. 2009 WL 1830808 at *8. There is no new evidence undermining this finding. Therefore, Petitioner's reliance on miscarriage of justice is unpersuasive.

**The state court's finding that counsel was not ineffective
does not bar the Court from excusing the procedural default.**

The remaining question is whether the Court is free to find that counsel was ineffective for not objecting to the verdict-form error in light of the state court's finding to the contrary.

After his conviction became final upon direct appeal, Petitioner filed a motion to alter, amend, or vacate sentence pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42.  Among other things, he claimed that counsel was ineffective for not objecting to the verdict-form error.

The trial court denied Petitioner's 11.42 motion, and the Kentucky Court of Appeals affirmed, finding that:  "[E]ven if Bailey's counsel was deficient in failing to object to these errors regarding the verdict, no prejudice resulted because the jury's verdict would not have changed.  The jury both intended and did convict him of murder, regardless of any irregularities."  A copy of the Kentucky Court of Appeals' "not to be published" opinion is at DN 9-3, pp. 653-664 and at 2014 WL 28671.

Ordinarily, 28 U.S.C. § 2254(d)[13] severely restrains a habeas court's ability, in effect, to disagree with a state court's adjudication of a constitutional claim.[14]  However, under Sixth Circuit case-law there is an exception where – as here -- an ineffectiveness claim is being asserted, not as a freestanding claim, but only for the limited purpose of establishing cause to excuse a procedural default.  "Although [a petitioner] must satisfy the [Section 2254(d)] standard with respect to his independent [ineffective assistance of counsel] claim, he need not do so to claim ineffective assistance for the purpose of

---

[13] The statute provides that:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[14] A Section 2254(d) review of a state court's finding of no ineffective assistance of counsel contemplates so-called "double deference":  To the case-law requirement that "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, supra, at 689, is added the statutory deference to state-court adjudications.

establishing cause" to excuse a procedural default. *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir.2006); *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir.2009) (same).

The Kentucky Court of Appeals' finding that counsel was not ineffective was based, not on an independent analysis, but an interpretation of the Kentucky Supreme Court's prior finding of no palpable error as being tantamount to a finding of no *Strickland* prejudice: "In Bailey's case, the issue of the ambiguous verdict form was fully reviewed and resolved by the Supreme Court on direct appeal." 2014 WL 28671, at *6. "In light of these previous rulings, it is evident that even if Bailey's counsel was deficient in failing to object to these errors regarding the verdict, no prejudice resulted because the jury's verdict would not have changed. The jury both intended and did convict him of murder, regardless of any irregularities." Id.

"[T]here are distinctions between palpable error under RCr 10.26 and the 'prejudice' requirement of *Strickland*. This prevents a palpable error analysis from being dispositive of an ineffective assistance claim." *Martin v. Commonwealth*, 206 S.W.3d 1, 4-5 (Ky.2006).

The state court's finding that counsel was not ineffective does not bar the Court from excusing the procedural default.

### Trial counsel was not ineffective for failing to investigate witnesses.

Petitioner seeks to revisit the Kentucky Court of Appeals' finding that counsel was not ineffective for failing to investigate potential witnesses who might have provided testimony supporting his defense of self-defense. Appended to the petition are the affidavits of four individuals Petitioner obtained in support of his 11.42 motion: Lakin Bradford (DN 1-2), Gloria Harris (DN 1-3), Kristie Morris (DN 1-4), and Mary Bailey (DN -5).

According to the Kentucky Supreme Court, "ample evidence," including eyewitness testimony, supported the prosecution's case that Petitioner was the initial aggressor:

> There was ample evidence upon which to believe that [Petitioner] returned to The Set [with a gun] to seek revenge [after being forced at gunpoint by Askew to leave]. Eyewitnesses testified that Askew was effectively ambushed and that he only fired his weapon after [Petitioner] shot him. Circumstantial evidence supported this conclusion. [Petitioner] returned with a loaded gun. He shot Askew eight times and then fled the scene. He remained a fugitive for a year [before being apprehended in Texas].
>
> (2009 WL 1830808 at *8).

None of the affidavits are from individuals who claim to be eyewitnesses. Therefore, they provide evidence that is either not directly relevant to the essential question of who was the initial aggressor or is cumulative in light of the evidence presented by Petitioner that he was not the initial aggressor.[15] Therefore, even if defense counsel had interviewed the potential witnesses, there is no indication that it would have resulted in evidence that was significantly valuable to the defense.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, supra, at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir.2005). However, counsel need not investigate exhaustively every aspect or potential angle of the defendant's case and cannot be expected to investigate a defense or witness unknown to him. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may

---

[15] The affidavit of Petitioner's mother, Mary Bailey, identifies no relevant information or potential witness. DN 1-5. The mother of Petitioner's son, Kristie Morris, states that she told defense counsel that Lakin Copeland and Gloria Harris were "potential witnesses" and that they had information concerning the "lies" Askew's cousin, Uvander Hunter -- an eyewitness -- was telling authorities to the effect that Petitioner was the initial aggressor. DN 1-4. Lakin Bradford (apparently the Lakin Copeland referred to by Ms. Morris) was not in a position to contradict Ms. Hunter's "lies" as she indicates that she was with Ms. Hunter at The Set shortly before the shooting, and they encountered Askew. Askew was "really mad about something ... raised up his shirt and showed Uvander something like he had a gun and said that he [was] ready for any punk niggas" and suggested that they leave -- which they did -- because "it was going to get ugly." DN 1-2. Gloria Harris saw Askew with a gun before the shooting. "His behavior was so erratic that immediately after speaking to him I turned back around and walked home." DN 1-3.

draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

The Kentucky Court of Appeals' finding that counsel was not ineffective for failing to investigate witnesses was not objectively unreasonable as contemplated by 28 U.S.C. § 2254(d).

### RECOMMENDATION

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court DENY the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Number 1) and GRANT a certificate of appealability on Petitioner's Due-Process claim.

### NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984).